**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------- X
FEDERAL INSURANCE COMPANY,     :
                             :
          Plaintiff,     :
                             :
  -against-          :
                             :
METROPOLITAN TRANSPORTATION   :
AUTHORITY, NEW YORK CITY     :
TRANSIT AUTHORITY, and       :
LANMARK GROUP, INC.        :
                             :
          Defendants.  :
------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/10/2017

No. 17 Civ. 3425 (JFK)
**OPINION & ORDER**

**JOHN F. KEENAN, United States District Judge:**

    Plaintiff, Federal Insurance Company ("Federal") has moved by Order to Show Cause for a preliminary injunction under Federal Rule of Civil Procedure 65(a). Federal seeks to restrain Defendants Metropolitan Transportation Authority ("MTA") and New York City Transit Authority ("NYCTA") and collectively, ("Defendants") from enforcing Federal's obligations under a performance bond related to a contract for construction at one of NYCTA's headquarters located at 130 Livingston Plaza in Brooklyn, New York (the "NYCTA Headquarters"). The Court held a hearing on June 29, 2017, and now denies the preliminary injunction because Federal has not demonstrated that it will suffer irreparable harm in the absence of such relief.

## I. Background

Federal is an Indiana corporation with its principal place of business in New Jersey. All defendants are New York corporations with their principal places of business in New York. Lanmark Group Inc. ("Lanmark"), who contracted to perform the work entailed in upgrading the elevator, roofing, and other portions of the NYCTA Headquarters, is not implicated in the instant application for injunctive relief.

On December 5, 2014, Lanmark and NYCTA entered into a construction contract (the "Contract") to upgrade the façade at the NYCTA Headquarters. (See Decl. of Derek Popeil [hereinafter "Popeil Decl."] Ex. A, ECF No. 23-1 (filed June 20, 2017).) The original price of the Contract was $24,517,850. (Id.) On September 19, 2014, Federal, as surety, executed a performance bond (the "Bond") in favor of MTA, acting by NYCTA, as obligee under the Bond. (Id. Ex. C, ECF No. 23-2.) The Bond incorporates the full amount of the Contract and states that the Contract "is annexed to and hereby made a part of this bond as though herein set forth in full[.]" (Id.) The Bond also provides:

> The Surety, for value received, hereby stipulates and agrees, if requested to do so by the Authority, to fully perform and complete the Project to be performed under the Contract, pursuant to the terms, conditions, and covenants thereof, if for any cause, the Contractor fails or neglects to so fully perform and complete such Project.

(Id.)  Lanmark paid Federal a premium in connection with executing the Bond.

On November 22, 2016, NYCTA notified Lanmark and Federal of ten putative events of default under the Contract pertaining to Lanmark's allegedly negligent and delaying work at the NYCTA Headquarters.  On April 19, 2017, NYCTA notified Lanmark by letter (the "Termination Letter") of its decision to terminate Lanmark due to its various alleged failures.  In May 2017, however, the Supreme Court of the State of New York, Kings County, temporarily enjoined NYCTA from enforcing its termination of Lanmark until September 6, 2017. (See Pl.'s Mem. of L. in Support of Appl. for Prelim. Inj. & TRO [hereinafter "Pl.'s Mem. of L."] Ex. A, ECF No. 22 (filed June 20, 2017); see also Popeil Decl. Ex. J, ECF No. 23-8.)  According to the parties, the dispute regarding NYCTA's termination of Lanmark is currently proceeding pursuant to the dispute resolution procedure set out in the Contract.

In the Termination Letter, also sent to Federal, NYCTA demanded that Federal honor its obligations under the Bond to ensure completion of the work under the Contract.  Federal has refused, claiming that it cannot be required to participate in the performance of Contract work because the NYCTA Headquarters allegedly has state and city code violations that pre-date the

Contract.[1] (See Pl.'s Mem. of L. at 10-12, 14-15.)  Federal further asserts that to complete the work now would require that it violate safety provisions in the New York Labor Law. (Id. at 9.)

In the instant application, Federal seeks a preliminary injunction enjoining Defendants from enforcing its obligations under the Bond.  Federal maintains that it will suffer irreparable harm unless an injunction issues and, further, that it is likely to succeed on the merits of this litigation. Defendants contend that Federal, as the surety, may satisfy its obligations under the Bond without actually participating in or performing the actual work.  Thus, Defendants claim that Federal will not suffer irreparable injury without an injunction and that Federal will not succeed on the merits.

## II. Legal Standard

Preliminary injunctive relief is "one of the most drastic tools in the arsenal of judicial remedies." Hanson Trust PLC v. SCM Corp., 774 F.2d 47, 60 (2d Cir. 1985).  In the Second

---

[1] After NYCTA notified Lanmark and Federal of the alleged events of default in November 2016, Federal retained WDP Consulting Engineers, PC ("WDP") to investigate the façade.  WDP conducted numerous site visits and memorialized its conclusions, including its findings regarding building code violations, in several reports.  Federal's claims concerning code violations that allegedly pre-date the Contract need not be resolved here because, as explained further below, Federal may satisfy its obligations under the Bond without actually performing the Contract work itself.

Circuit, it is axiomatic that "[a] party seeking a preliminary injunction must show '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'" Park Irmat Drug Corp. v. Optumrx, Inc., 152 F. Supp. 3d 127, 132 (S.D.N.Y. 2016) (quoting Citigroup Glob. Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 35 (2d Cir. 2010) (reciting standard in case where jurisdiction was premised on diversity of the parties)). "A moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." NAACP v. Town of E. Haven, 70 F.3d 219, 224 (2d Cir. 1995).

"In addition, the court must ensure that the public interest would not be disserved by the issuance of a preliminary injunction." Park Irmat Drug Corp., 152 F. Supp. 3d at 132. (internal quotation marks omitted). "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." Id. (internal quotation marks omitted).

## III. Discussion

The application for a preliminary injunction must be denied
because Federal has not demonstrated that it will suffer
irreparable harm in the absence of injunctive relief.  A showing
of irreparable harm is the sine qua non of a preliminary
injunction. See REDF Organic Recovery, LLC v. Kafin, No. 12 Civ.
7973(JFK), 2012 WL 5844191, at *2 (S.D.N.Y. Nov. 19, 2012); see
also Town of E. Haven, 70 F.3d at 224 ("[A] showing of
irreparable harm [is] the most important prerequisite for the
issuance of a preliminary injunction.").  Here, Federal's
principal argument is that, without an injunction, it will
suffer irreparable harm if required to participate in the
performance of work that it contends is dangerous and does not
correct alleged code violations. (See Pl.'s Mem. of L. at 10-12,
14-15.)  Federal's argument is unpersuasive, however, because
any injury Federal claims either can be compensated by money
damages or constitutes an injury, not to Federal, but to unknown
third parties not presently before the Court.

As the surety, Federal has the option to perform the
Contract work itself, but need not do so.  Instead, Federal may
satisfy its obligations under the Bond by tendering funds so
that the Contract work may be completed by another party. See
Granite Computer Leasing Corp. v. Travelers Indem. Co., 894 F.2d
547, 551 (2d Cir. 1990) ("Under a performance and completion

6

bond, a surety generally has two options upon its principal's default. First, the surety may undertake to complete the principal's work itself; this obligation may be satisfied by the surety funding the principal to complete its work. Second, the surety has the option of paying the obligee under the bond its damages, essentially the obligee's cost of completion." (citations omitted)); see also U.S. Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 369 F.3d 34, 66 (2d Cir. 2004) ("Because the Sureties chose not, either on their own or through agents, to incur the costs of completion, the Sureties must reimburse the Obligees for those costs in the form of an award of damages."). Because Federal can meet its obligations by tendering funds, any injury it might sustain—for example, if fault ultimately lies with Defendants—would be financial in nature and, therefore, could be redressed by money damages. Accordingly, Federal fails to demonstrate irreparable harm warranting injunctive relief. See Town of E. Haven, 70 F.3d at 224 ("A moving party must show that the injury . . . is not capable of being fully remedied by money damages."); see also Brenntag Int'l Chems., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999) ("As a general matter, because monetary injury can be estimated and compensated, the likelihood of such injury usually does not constitute irreparable harm.").

The only other injury that Federal identifies is the potential for physical danger in connection with performance of work under the Contract, which allegedly fails to correct purported code violations. According to Federal, its participation in the performance of the Contract work in any way "would create a hazard for both the workers performing that work and the public." (Pl.'s Mem. of L. at 15.) To be sure, the public interest is a factor in the preliminary injunction analysis, but the theoretical possibility of harm to third parties is not relevant to, and does not establish, the required showing of irreparable harm to Federal, the proponent of injunctive relief in this application. See Town of E. Haven, 70 F.3d at 224 ("The public safety factor is, of course, only one aspect of the irreparable harm prong of the showing necessary to secure a preliminary injunction. In the final analysis, it is the [applicants] who must demonstrate how they would be irreparably harmed if the injunction were not granted."). Thus, Federal's argument that its involvement in performing the Contract might endanger the community members, the workers in the NYCTA Headquarters, and the people responsible for repairs and restoration does not demonstrate the irreparable harm to Federal that it is required to show.

## Conclusion

For the reasons stated above, the application for a preliminary injunction is DENIED. The Court, having concluded that Federal has not demonstrated that it will suffer irreparable harm without injunctive relief, declines to reach the parties' remaining arguments concerning this application.

**SO ORDERED.**

Dated:    New York, New York
            July 10, 2017

                                       John F. Keenan
                        United States District Judge