USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/25/2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------- X
FEDERAL INSURANCE COMPANY,                :
                                          :
            Plaintiff,                    :
                                          :
     -against-                            :
                                          :   No. 17 Civ. 3425 (JFK)
METROPOLITAN TRANSPORTATION               :   **OPINION & ORDER**
AUTHORITY, NEW YORK CITY TRANSIT          :
AUTHORITY, and LANMARK GROUP, INC.,       :
                                          :
            Defendants.                   :
                                          :
----------------------------------------- X

APPEARANCES

FOR PLAINTIFF FEDERAL INSURANCE COMPANY
     Jonathan S. Bondy
     Marc Richard Lepelstat
     CHIESA SHAHINIAN & GIANTOMASI PC

FOR DEFENDANTS METROPOLITAN TRANSPORTATION AUTHORITY AND NEW YORK CITY TRANSIT AUTHORITY
     Ira Jonathan Lipton
     Marc Aaron Melzer
     HOGUET NEWMAN REGAL & KENNEY, LLP

**JOHN F. KEENAN, United States District Judge:**

Before the Court is a motion under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendants Metropolitan Transportation Authority ("MTA") and New York City Transit Authority ("NYCTA") to dismiss Plaintiff Federal Insurance Company's ("Federal") first cause of action for rescission and declaratory judgment. For the reasons stated below, MTA and NYCTA's motion is granted.

1

## I. Background

### A. Factual Background

The following facts and allegations are taken from the First Amended Complaint ("FAC") unless otherwise noted. Federal is a corporation organized and existing pursuant to Indiana law, with principal place of business in Whitehouse Station, New Jersey. (First Am. Comp., ¶ 1, ECF No. 13 (filed May 22, 2017) [hereinafter "FAC"].) MTA and NYCTA are both public benefit corporations organized and existing pursuant to New York law, with principal places of business in New York City. (Id. ¶¶ 2-3.) Lanmark Group, Inc. ("Lanmark")—a defendant that is not involved in the instant motion—is a corporation organized and existing pursuant to New York law with principal place of business in New York City. (Id. ¶ 4.)

On or around December 5, 2014, MTA—acting by and through NYCTA—entered into a contract with Lanmark (the "Contract") whereby Lanmark was to perform various rehabilitations and upgrades to 130 Livingston Place, Brooklyn, New York (the "Building"), which houses NYCTA's headquarters. (Id. ¶¶ 3, 7.) Relevant to this motion, the Contract's Article 8.03 sets forth alternative dispute resolution procedures under which either the NYCTA's Chief Engineer or its Contractual Disputes Review Board ("CDRB") renders final and binding decisions in contractual disputes. (Defs.' Mem. of L. in Supp. of Mot. to Dismiss, Ex. A

at Art. 8.03(A) & (B), ECF No. 23-1 (filed Sept. 28, 2017) [hereinafter "Contract"].) Additionally, the Contract is to be "governed by and construed in accordance with the laws of the State of New York except to the extent that" federal law supersedes it. (Id. at Art. 8.05(B).)

On or around September 19, 2014, before the Contract was executed, Federal and Lanmark executed a performance bond ("the Bond"), obligating Federal to complete the Contract in the event that Lanmark fails to do so. (FAC ¶ 9.) The Bond attached a copy of the Contract and incorporated it "as though herein set forth in full." (FAC Ex. A at 2, ECF No. 13-1 (filed May 22, 2017) [hereinafter "Bond"].)

It is unclear when construction began, but on November 22, 2016, NYCTA advised Lanmark and Federal of ten separate alleged events of default, many relating to work on the building's façade. (FAC ¶ 24.) On January 2, 2017, Lanmark responded to each of the allegations in the NYCTA letter in detail, denying that Lanmark was in material breach of the Contract. (Id. ¶ 25.)

On April 19, 2017, NYCTA notified Lanmark that it was terminating the Contract as it believed Lanmark was in material breach. (Id. ¶ 35.) The termination notice demanded Federal complete the Contract under the Bond notwithstanding that Federal had previously advised NYCTA that the Building's

3

"masonry veneer system" was in violation of New York City's Building Code. (Id. ¶¶ 36-37.)

In an April 28, 2017 letter, Federal advised NYCTA that neither Federal nor any other party would be able to perform the Contract as written because the Contract fails to comply with applicable New York City and New York State building code requirements. (Id. ¶ 38.) The letter attached a report by an engineering firm detailing how the both the Building's deficiencies and the terms of the Contract to improve them violated the building code in effect at the time of the façade's original construction and the current building code. (Id. ¶¶ 39-40.)

On April 29, 2017, Lanmark filed a dispute notice with NYCTA, pursuant to Article 8.03 of the Contract, contending that NYCTA's termination was wrongful and constituted a breach of the Contract. (Id. ¶ 45.)

### B. Procedural History

On May 22, 2017, Federal filed the FAC which includes a single cause of action against the MTA and NYCTA seeking (1) a judgment, pursuant to 28 U.S.C. § 2201, declaring that Federal has no obligation to complete the Contract under the Bond and (2) an injunction enjoining MTA and NYCTA from compelling Federal to complete the Contract. (Id. ¶ 47-67.) The FAC also

4

includes four causes of action against Defendant Lanmark only. (Id. ¶¶ 68-80.)

On September 28, 2017, MTA and NYCTA filed the instant motion, pursuant to Rules 12(b)(1) and 12(b)(6), to dismiss the Plaintiff's sole claim against them. On December 13, 2017, the Court heard oral argument on this motion.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when a district court lacks the statutory or constitutional power to adjudicate the case. See Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The party "asserting subject matter jurisdiction carries the burden of proving by a preponderance of evidence that it exists." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (quoting Makarova, 201 F.3d at 113). In reviewing a motion to dismiss under Rule 12(b)(1), the Court accepts all material factual allegations in the complaint as true, but does not draw inferences from the complaint favorable to the plaintiff. J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (citing Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998)). In deciding such a motion, the Court may consider evidence outside of the pleadings, such as affidavits, to resolve the disputed

5

jurisdictional fact issues. Zappia Middle E. Constr. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court's charge in ruling on a Rule 12(b)(6) motion "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." GVA Market Neutral Master Ltd. v. Veras Capital Partners Offshore Fund, Ltd., 580 F. Supp. 2d 321, 327 (S.D.N.Y. 2008) (quoting Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 176 (2d Cir. 2004)). The Court must construe the complaint in the light most favorable to the plaintiff, "taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009). The Court, however, is not required to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." Iqbal, 556 U.S. at 678. A complaint that offers such "labels and conclusions" or naked assertions without "further factual enhancement" will not survive a motion to dismiss. Id. (citing Twombly, 550 U.S. at 555, 557).

6

MTA and NYCTA fashion the instant motion as a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) recognizing that where a "dismissal motion is based on the existence of arbitration or an ADR procedure, it is unsettled whether the correct procedural vehicle" is Rule 12(b)(1) or 12(b)(6). (Defs.' Mem. of L. in Supp. of Mot. to Dismiss at 13 n.8, ECF No. 42 (filed Sept. 28, 2017) [hereinafter "Supp."] (citing Tyler v. City of New York, No. 05 Civ. 3620, 2006 WL 1329753, at *2 (E.D.N.Y. May 16, 2006) (collecting cases variously dismissed under Rules 12(b)(1), 12(b)(6), and the Federal Arbitration Act ("FAA")))).) The Court, following the example of its sister courts, declines to resolve that ambiguity here as the result in this case "would be the same under nearly any of the available mechanisms." Veliz v. Collins Bldg. Servs., Inc., No. 10 Civ. 6615 (RJH), 2011 WL 4444498, at *3 (S.D.N.Y. Sept. 26, 2011); see also Hamzaraj v. ABM Janitorial Northeast Inc., No. 15 Civ. 2030 (ER), 2016 WL 3571387, at *4 n.4 (S.D.N.Y. June 27, 2016); Greene v. Am. Bldg. Maint., No. 12 Civ. 4899 (DLI)(LB), 2013 WL 4647520, at *2 n.2 (E.D.N.Y. Aug. 28, 2013).

### III. Discussion

MTA and NYCTA argue that Federal's claim is subject to Article 8.03 which, they allege, requires that all claims concerning the Contract be brought in arbitration before either the Chief Engineer or the CDRB. (Supp. at 13-17, 19.)

7

Therefore, they argue, this Court is not the appropriate venue for this claim, and it must be dismissed. (Id. at 20.)  In opposition, Federal argues that Article 8.03 is inapplicable as (1) it only controls Lanmark's claims or challenges against the MTA or NYCTA, not Federal's, and (2) Federal's claim arises out of a dispute over the enforceability of the Bond which requires Federal to carry out an illegal contract, a separate dispute from those which Article 8.03 requires be heard in arbitration. (Pl.'s Mem. of L. in Opp. to Defs.' Mot. to Dismiss at 22-24, ECF No. 44 (Sept. 28, 2017) [hereinafter "Opp."].)

Accordingly, the Court must decide (1) whether Federal is subject to Article 8.03's arbitration clause and, if so, (2) whether the Court is the appropriate venue for what is essentially a dispute over the arbitrability of Federal's claim.

**A. Whether Federal is Subject to Article 8.03**

**1. Is Article 8.03 an Arbitration Clause?**

It is undisputed that Federal did not execute the Contract which contains Article 8.03.  Under the Federal Arbitration Act (the "FAA") and New York law, however, Federal may still be subject to Article 8.03 since a "nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with the signatory to the arbitration agreement which incorporates the existing arbitration clause."

Clarendon Nat'l Ins. Co. v. Lan, 152 F. Supp. 2d 506, 520 (S.D.N.Y. 2001) (Koeltl, J.) (citing Maritime S.A. v. Marinera, S.A., No. 96 Civ. 1888 (DC), 1999 WL 46721, at *5 (S.D.N.Y. Feb. 1, 1999), aff'd, 201 F.3d 431 (2d Cir. 1999)); Matter of Int'l Fidelity Ins. Co. (Saratoga Springs Public Library), 653 N.Y.S.2d 729, 730-31 (App. Div. 1997). Accordingly, the first relevant inquiry is whether Article 8.03's procedures constitute "arbitration" such that it could be considered an arbitration clause under the FAA.

In Bakoss v. Certain Underwriters at Lloyds of London Issuing Certificate No. 0510135, the Second Circuit held that Federal common law—not state law—provides the definition of "arbitration" under the FAA. 707 F.3d 140, 143 (2d Cir. 2013). In so holding, the Second Circuit endorsed the district court's reliance on two cases that analyzed the contours of "arbitration" under the FAA. Id. (citing McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co., 858 F.2d 825, 830 (2d Cir. 1988); AMF Inc. v. Brunswick Corp., 621 F. Supp. 456, 460 (E.D.N.Y. 1985)). Those courts held that "[n]o magic words such as 'arbitrate' . . . are needed to obtain the [FAA's] benefits." AMF, 621 F. Supp. at 460; see also McDonnell Douglas, 858 F.2d at 830. "Rather, what is important is that the parties clearly intended to submit some disputes to their chosen instrument for the definitive settlement of certain grievances under the

9

agreement." Seed Holdings, Inc. v. Jiffy Int'l AS, 5 F. Supp. 3d 565, 577 (S.D.N.Y. 2014) (quoting McDonnell Douglas, 858 F.2d at 830 (citation and internal quotation marks omitted)); see also Bakoss, 707 F.3d at 142-44 (finding a clause calling for a third physician to determine the plaintiff's disability constituted an "arbitration agreement"); Cummings v. Consumer Budget Counseling, Inc., No. 11 Civ. 3989 (SJF)(ETB), 2012 WL 4328637, at *3-4 (E.D.N.Y. Sept. 19, 2012) (finding a clause calling for disputes to be submitted to mediation and resolved in accordance with Florida law is an arbitration agreement under the FAA).

Here, under Article 8.03, "the parties to th[e] Contract" agreed to submit disputes "arising out of, under, or in connection with" the Contract to a specified third party, either the Chief Engineer or the CDRB, whose decision shall be "final and binding." (Contract at Art. 8.03(B)(1)&(2).) These procedures are clearly the type of dispute settlement that federal common law considers an arbitration. See, e.g, Seed Holdings, 5 F. Supp. 3d at 577. Accordingly, Article 8.03 constitutes an arbitration clause under the FAA.[1]

---

[1] Although, as mentioned, Bakoss emphasized the primacy of federal common law in this inquiry, the result would be the same under New York state law as New York courts have found provisions with substantially similar wording to Article 8.03 to be arbitration clauses. See, e.g., Westinghouse Elec. Corp. v. New York City Transit Auth., 82 N.Y.2d 47 (1993); Lovisa Constr. Co. Inc. v. Metropolitan Tranp. Auth., 225 A.D.2d 740, 740-41

## 2. Does the Bond Incorporate Article 8.03?

As the Court has found Article 8.03 to be an "arbitration" clause, the next relevant inquiry is whether the Bond incorporated Article 8.03. Clarendon, 152 F. Supp. 2d at 520 ("A nonsignatory to an agreement containing an arbitration provision can be compelled to arbitrate when the nonsignatory is a party to a separate contractual relationship with the signatory to the arbitration agreement which incorporated the existing arbitration clause.").

While, as previously mentioned, Federal was not a party to the Contract which includes Article 8.03, the Bond, to which Federal was party, attaches the Contract and incorporates it "as though herein set forth in full." (Bond at 2-3.) The Bond contains no language limiting that incorporation. As such, the Bond incorporates the Contract and thus Article 8.03.

This, however, does not end the inquiry. "Notwithstanding the existence of a separate contract between the signatory and the nonsignatory incorporating the arbitration agreement by reference, the nonsignatory still cannot be compelled to arbitrate <u>unless the arbitration clause itself contains language broad enough to allow nonsignatories' disputes to be brought</u>

---

(2d Dep't 1996); <u>Phoenix Marine Co. v. New York City Transit Auth.</u>, 4 Misc. 3d 1014(A), at *3 (N.Y. Sup. Ct. 2004).

11

within its terms." Maritime, 1999 WL 46721, at *5 (internal quotations omitted) (emphasis added).

Courts in this Circuit have long held that "a broadly-worded arbitration clause which is not restricted to the immediate parties may be effectively incorporated by reference into another agreement." Ibeto Petrochemical Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 63 (2d Cir. 2007) (quoting Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela, 991 F.2d 42, 48 (2d Cir. 1993)). However, "an arbitration agreement restricted to the immediate parties does not bind a non-party, notwithstanding words of incorporation or reference in a separate contract by which the non-party is bound." Progressive, 991 F.2d at 47.

Here, the language of Article 8.03 states that the "parties to the Contract hereby authorize and agree to the resolution of all Disputes arising out of, under, or in connection with, the Contract" in accordance with procedures that call for either the Chief Engineer or the CDRB to arbitrate. (Id. at Art. 8.03(B).) This language does not precisely mirror the paradigmatic "broad" arbitration clause, but it does make arbitration the only means for the parties to the Contract to resolve any dispute in connection with the Contract. Accordingly, it is sufficiently broad to bind Federal to arbitration. See Ibeto, 475 F.3d at 59, 63 ("Any and all differences and disputes of whatsoever nature

12

arising out of this Charter shall be put to arbitration" is sufficiently broad to require a nonsignatory to go to arbitration); Progressive, 991 F.2d at 48 (finding the language "[a]ny question or dispute arising between the contracting parties concerning the interpretation of this agreement" sufficiently broad to require a nonsignatory to go to arbitration).

## B. Whether the Court Can Decide Arbitrability

Having decided that Federal is subject to the Contract's arbitration clause, the Court must now decide whether it is the appropriate venue for the parties' arbitrability dispute.

The question of arbitrability "is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 344 (2d Cir. 2010) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002)); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); AT & T Techs. Inc. v. Commc'ns Workers of America, 475 U.S. 643, 649 (1986). This presumption in favor of judicial determination of arbitrability may be overcome where the parties have entered into a separate agreement that (1) employs language stating "any and all" controversies are to be determined by arbitration or (2) expressly incorporates the provisions of a tribunal that requires questions of arbitrability to be decided in

13

arbitration. <u>Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC</u>, No. 06 Civ. 1510 (WHP), 2006 WL 2331009, at *3 (S.D.N.Y. 2006) (citing <u>John Hancock Life Ins. Co. v. Wilson</u>, 254 F.3d 48, 55 (2d Cir. 2001)).

As detailed above, the Contract specifies that the "parties to this Contract hereby authorize and agree to the resolution of <u>all Disputes</u> arising out of, under, or in connection with, the Contract" are to take place in arbitration. (<u>Id.</u> at Art. 8.03(B)(1) & (2) (emphasis added).) As detailed in the previous section, this is exactly the sort of language that subjects any and all controversies to arbitration. Indeed, the Contract specifies that the relevant state and federal courts should only be involved <u>after</u> the arbiter has made its final decision on the dispute and, even then, the such a court's review "shall be limited to the question of whether or not the Arbiter's determination is arbitrary, capricious or lacks a rational basis." (<u>Id.</u> at Art. 8.05.) Accordingly, Federal, MTA, and NYCTA "clearly and unmistakably" provided that arbitrability is an issue for the Contract's specified arbiters—not this Court—to decide. <u>T.Co Metals</u>, 592 F.3d at 344. As such, this arbitrability dispute must be arbitrated.

### C. Dismissal v. Stay

Had MTA and NYCTA so requested, the Court would have been prepared to stay this claim pending arbitration rather than

14

dismiss. Denson v. Donald J. Trump for President, Inc., 18-cv-2690 (JMF), 2018 WL 4568430, at *2 (S.D.N.Y. Aug. 30, 2018) (citing Katz c. Cellco P'ship, 794 F.3d 341, 345 (2d Cir. 2015) ("We join those Circuits that consider a stay of proceedings necessary after all claims have been referred to arbitration and a stay requested." (emphasis added))). Here, however, as in Denson, MTA and NYCTA have requested dismissal, not a stay, and Plaintiff has neither opposed that relief nor requested a stay. Id. Further, this is the only claim Plaintiff has made against the MTA and NYCTA as all other claims are against Defendant Lanmark. Accordingly, this claim must be dismissed. Id. (citing Spencer-Franklin v. Citigroup/Citibank N.A., No. 06-CV-3475 (GBD)(GWG), 2007 WL 521295, at *4 (S.D.N.Y. Feb 21, 2007), report and recommendation adopted, 2006 WL 1052451 (S.D.N.Y. Apr. 5, 2007) (noting that "where all the issues raised in the Complaint must be submitted to arbitration" and "defendants have sought dismissal rather than a stay, the courts in this district have granted dismissal" (collecting cases) (internal quotations and brackets omitted)).

Because the Court finds this claim can be dismissed on these grounds, it does not need to analyze MTA and NYCTA's remaining grounds for dismissal.

## Conclusion

For the reasons stated above, MTA and NYCTA's Motion to Dismiss the first cause of action is GRANTED. As this is the Plaintiff's only claim against these two defendants, they must also be removed from this case.

Federal's claims against Defendant Landmark, however, are to proceed. To that end, Federal and Landmark are ordered to attend an initial conference before the Court on December 5, 2018 at 11 a.m.

The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 41 and remove Defendants Metropolitan Transportation Authority and New York City Transit Authority from this case.

**SO ORDERED.**

Dated: New York, New York
October 24, 2018

John F. Keenan
United States District Judge